# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Joseph Abruzzo, Respondent,

v.

Bravo Media Productions LLC, Haymaker Media, Inc.,
NBC Universal Media, LLC, Comcast Corporation,
Craig Conover, Chelsea Meissner, and Madison LeCroy,
Appellants.

Appellate Case No. 2020-001095

———————

Appeal From Charleston County
Bentley Price, Circuit Court Judge

———————

Opinion No. 6004
Heard June 5, 2023 – Filed July 26, 2023

———————

## REVERSED AND REMANDED

———————

James David Smith, Jr., Helen F. Hiser, and Danielle F.
Payne, all of McAngus Goudelock & Courie, LLC, of
Mt. Pleasant, for Appellants.

Aaron Eric Edwards, of George Sink, PA Injury
Lawyers, of North Charleston, for Respondent.

———————

**KONDUROS, J.:** Bravo Media Productions, LLC, Haymaker Media, Inc., NBC
Universal Media, LLC, Comcast Corporation, Craig Conover, Chelsea Meissner,
and Madison LeCroy (Appellants) appeal the circuit court's Form 4 Order denying

their motion to dismiss Joseph Abruzzo's amended complaint and compel arbitration. Appellants assert the arbitrator should decide whether Abruzzo's claims are subject to arbitration. We reverse the circuit court's order and remand for an order compelling arbitration.

**FACTS**

In the fall of 2018, Abruzzo met Kathryn Dennis. At that time, Abruzzo was a Florida politician and Dennis was a cast member on the reality television show *Southern Charm.*[1] Shortly after meeting, Abruzzo and Dennis began a romantic relationship. According to Abruzzo, Dennis asked him to appear on season six of *Southern Charm*. Abruzzo claims that the show runners wanted him to go on a "guy's trip" with other cast members or have a dinner date with Dennis in a "public crowded restaurant." Instead, Abruzzo agreed to be a voluntary participant on the show for a private dinner at Dennis's house in downtown Charleston.

Abruzzo admits that he signed a three-page Release and Arbitration Agreement[2] before filming began. In paragraph 6 of the agreement, Abruzzo agreed that he would not be paid for any of the rights listed in the agreement. Abruzzo also acknowledged and agreed that "a significant element of the consideration" he received under the agreement was the opportunity for publicity.

In paragraph 8 of the agreement, Abruzzo agreed that he understood that "other parties may communicate private, factual, or fictional information" about himself that he could find "humiliating or embarrassing or that is defamatory, disparaging or unfavorable and that the depiction of such information may portray [him] in a false light." Abruzzo consented to the inclusion of this information in the show "even to the extent such inclusion might otherwise constitute an actionable tort."

---

[1] *Southern Charm* features the personal and professional lives of various Charleston residents.

[2] All of the appellants in this case are parties to the agreement. Pursuant to its terms, NBC Universal Media, LLC, is designated as the Network; Comcast Corporation and Bravo Media Productions LLC, are designated as affiliated entities; Haymaker Media, Inc is designated as the Producer; and the individual defendants are express intended third party beneficiaries of the Release and Arbitration Agreement.

Paragraph 19 of the agreement, entitled "**MEDIATION & ARBITRATION**," contains the arbitration clause.

> **WHERE ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT ARISES, THE PARTIES AGREE TO FIRST TRY TO RESOLVE SUCH DISPUTE THROUGH CONFIDENTIAL MEDIATION. IF MEDIATION IS UNSUCCESSFUL, THEN ALL DISPUTES, INCLUDING THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION ADMINISTERED BY JAMS[3] OR ITS SUCCESSOR ("JAMS") IN ACCORDANCE WITH ITS STREAMLINED ARBITRATION RULES AND PROCEDURES . . . . ALL SUCH PROCEEDINGS WILL BE CONDUCTED IN THE CITY OF NEW YORK. MY AGREEMENT TO MEDIATE ANY AND ALL DISPUTES SHALL EXTEND TO THE RELEASED PARTIES.**

Additionally, the following is printed immediately above the signature line:

> **I HAVE HAD AMPLE OPPORTUNITY TO READ THIS ENTIRE AGREEMENT, HAD AN OPPORTUNITY TO REVIEW THIS AGREEMENT WITH AN ATTORNEY OF MY CHOICE, AND HAVE IN FACT READ THIS AGREEMENT. I UNDERSTAND THAT I AM GIVING UP LEGAL RIGHTS IN THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, MY RIGHT TO FILE A LAWSUIT IN COURT OR TO BRING A CLAIM IN CONNECTION WITH THIS AGREEMENT.**

Abruzzo claims that prior to and following filming, Appellants assured him that the show would portray him in a good light. Abruzzo also asserts that he was under

---

[3] JAMS stands for Judicial Arbitration and Mediation Services, Inc.

pressure to sign the agreement because he and Dennis had gone through hair and makeup and were sitting down for dinner, the film crew was ready to begin, and "bright lights" were shining on him.

Additionally, Abruzzo initially alleged that he was presented with a document for his signature "turned to the third page." Abruzzo then alleged that he was presented with a "partial piece of paper with only the signature portion of the page visible," and Appellants assured him that the document simply authorized them to film the dinner. However, the executive producer asserted that Abruzzo asked a question about paragraph 5 of the agreement, which is located on the first page. Additionally, the record contains a photograph that shows Abruzzo displaying the third page of the agreement and clearly depicts more than just a signature block.

Abruzzo claims that he ended his relationship with Dennis in early 2019, and Appellants "later falsely claim[ed] that Dennis ended the relationship . . . as a result of the concern expressed by other cast members . . . ." Abruzzo asserts these concerns were false and "designed and intended to defame, disparage, and/or portray [him] as an unsafe, corrupt, abusive and/or otherwise unsavory individual in order to preserve and further Dennis's storyline on the show."

Specifically, Abruzzo alleges that Conover made false statements during an episode of *Southern Charm* by saying that Abruzzo is "a disgraced politician in Florida" and "not running for re-election because of his divorce. His wife is accusing him of being physically abusive." Additionally, Abruzzo alleges that LeCroy, Meissner, and other individuals falsely stated there were nude photographs of him on the internet. Abruzzo asserts that such photographs do not exist, and Appellants intentionally showed a photograph with "the image blurred at the bottom of his torso" to imply the cast members were looking at his penis.

On January 28, 2020, Abruzzo filed a complaint in the Charleston County Court of Common Pleas, alleging ten causes of action against Appellants.[4] On May 12, 2020, Appellants filed a motion to dismiss. On June 19, 2020, Appellants filed a corresponding memorandum in support, and Abruzzo filed an amended complaint

---

[4] Abruzzo's claims were for Outrage/Intentional Infliction of Emotional Distress; Fraud; Constructive Fraud; Negligent Misrepresentation; Fraudulent Inducement; Civil Conspiracy; Defamation; Violation of the South Carolina Unfair Trade Practices Act; Negligence; and Unjust Enrichment.

that added seven additional causes of action.[5]  Abruzzo also filed a one-paragraph response to Appellants motion to dismiss, arguing that it was moot in light of his amended complaint.  On June 22, 2020, Appellants filed a motion to dismiss the amended complaint and to compel arbitration as well as a supporting memorandum.  On June 29, 2020, Abruzzo filed a memorandum in opposition.  The circuit court presided over a hearing between the parties on June 30, 2020.

On July 6, 2020, the circuit court issued a Form 4 Order denying Appellants' motion to dismiss and compel arbitration.  Appellants requested that the circuit court issue a detailed written order setting forth the reasons for denying the motion.  Abruzzo opposed that request.  In response, the circuit court's law clerk responded: "[W]e did a [F]orm 4 [Order], and I believe it indicated that if the parties desired formal orders they could submit them to us.  If it did not include that part I apologize."  On July 16, 2020, Appellants filed a motion for reconsideration pursuant to Rule 59(e).  The circuit court denied Appellants' motion on July 22, 2020, stating a hearing was not necessary.  This appeal followed.

## STANDARD OF REVIEW

"Arbitrability determinations are subject to de novo review."  *Smith v. D.R. Horton, Inc.*, 417 S.C. 42, 47, 790 S.E.2d 1, 3 (2016).  "However, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings."  *Id.* at 48, 790 S.E.2d at 3.

## LAW/ANALYSIS

Appellants argue that the circuit court erred in failing to enforce the parties' arbitration agreement.  Appellants assert that the arbitrator should decide whether

---

[5] Abruzzo's additional claims were for Wrongful Appropriation of Personality/Infringement on the Right of Publicity; Wrongful Publicizing of Private Affairs; Public Nuisance; Private Nuisance; Fraudulent Inducement of Arbitration Agreement/Unconscionability of Arbitration Agreement; and Fraudulent Inducement of Release/Unconscionability of Release; and Rescission of "Release and Arbitration Agreement."

Abruzzo's claims are subject to arbitration because Abruzzo's allegations focus on the agreement as a whole rather than the arbitration clause specifically. We agree.

"Due to the strong South Carolina and federal policy favoring arbitration, arbitration agreements are presumed valid." *Doe v. TCSC, LLC*, 430 S.C. 602, 607, 846 S.E.2d 874, 876 (Ct. App. 2020). The parties' contract is governed by the Federal Arbitration Act (FAA), which states the following:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2.

"Because an arbitration provision is often one of many provisions in a contract covering many other aspects of the transaction, the first task of a court is to separate the arbitration provision from the rest of the contract. This . . . is the law[] known as the *Prima Paint* doctrine." *Doe*, 430 S.C. at 607, 846 S.E.2d at 876 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). Accordingly, "[c]hallenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two types." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). "One type challenges specifically the validity of the agreement to arbitrate." *Id.* "The other challenges the contract as a whole, . . . *e.g.*, the agreement was fraudulently induced . . . ." *Id.*

Under the *Prima Paint* doctrine, "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the . . . court may proceed to adjudicate it." *Id.* at 445 (quoting *Prima Paint*, 388 U.S. at 403-404). However, "the statutory language [of section 4 of the

FAA[6]] does not permit the . . . court to consider claims of fraud in the inducement of the contract generally." *Id.* (quoting *Prima Paint*, 388 U.S. at 403-404).

In *Buckeye Check Cashing, Inc.*, the United States Supreme Court provided the following:

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.

*Id.* at 445-46. The Court concluded that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449.

Here, the arbitration clause is severable from the entire agreement. The clause is contained only in paragraph 19 of the agreement and is highlighted by the title appearing in bold, underlined, and capital letters. The rest of the arbitration clause is also highlighted by appearing in bold and capital letters, unlike the paragraphs around it. Additionally, the broad language of "any dispute in connection with this agreement" includes the enforceability and validity of the parties' agreement.

---

[6] A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court [with jurisdiction] . . . for an order directing that such arbitration proceed in a manner provided for in such agreement. . . . [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

Like the parties opposed to arbitration in *Prima Paint* and *Buckeye*, Abruzzo challenges the validity and enforceability of the entire contract rather than the arbitration clause specifically. Abruzzo alleges that producers assured him that he would be portrayed in a good light and that he felt pressure to sign the agreement due to the film crew and bright lights. These allegations do not specifically pertain to the arbitration clause; rather, they address how he felt about signing the entire agreement to both appear on the show and arbitrate any disputes. Therefore, Abruzzo has failed to specifically challenge the arbitration agreement independently from the rest of the agreement as required under *Prima Paint* and *Buckeye*. Accordingly, we reverse the circuit court's order and remand for an order compelling arbitration.[7]

**CONCLUSION**

Abruzzo challenges the validity and enforceability of the parties' agreement as a whole rather than the arbitration agreement specifically. Therefore, the circuit court's order is

**REVERSED AND REMANDED.**

**VINSON, J., and LOCKEMY, A.J., concur.**

---

[7] Because we remand on this issue, we do not address Appellants' other contentions. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting appellate courts need not address remaining issues when disposition of an issue is dispositive).